# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIC WESTRY, : | |
|     Plaintiff : | |
| : | |
| v. : | Case No. 3:06 CV 22 (CFD) |
| : | |
| STAMFORD PUBLIC SCHOOLS : | |
|     Defendant. : | |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Eric Westry, brings this pro se action against his former employer, the Stamford Public Schools (the "District"). Westry alleges that the District discriminated against him on the basis of his race and gender in violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. §§ 2000e, et seq., and Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et seq., and that the District defamed him. The District moves for summary judgment.

I.    Background[1]

Westry, an African American, was employed as a guidance counselor at Westhill High School in Stamford, Connecticut from December 13, 2000 to August 20, 2004.[2] Carole Deluca, the Chair of the Guidance Department at Westhill, was Westry's supervisor. During this period,

---

[1] These facts are taken from the defendant's Local Rule 56(a) statement and the attached exhibits. While Westry did not submit a Rule 56 statement, the Court has considered Westry's submissions, including documents submitted to the EEOC, his resignation letter, e-mails from Westry's former colleagues and the parents of Westhill students, a letter of reference, e-mails concerning a student's request to be inducted in the National Honor Society, an e-mail accepting Westry's resignation, and an audio disc that apparently contains a telephone conversation between Westry and one of his former colleagues.

[2] Westry was one of eleven guidance counselors at Westhill; three counselors–in addition to Westry–were minorities.

1

Camille Figluizzi was the principal at Westhill, and Maria Fiori was an assistant principal.

During Westry's employment at Westhill, he never received an unsatisfactory evaluation, was never formally disciplined, never filed a grievance through his labor union, and never lodged a complaint with the principal's office or the personnel office for the District.

In June 2004, Fiori completed an evaluation of Westry. In the evaluation, Fiori commented that "Westry continues to be more the therapist than the guidance counselor." Westry objected that this comment was "harsh and misplaced" because he felt responsible for helping students with concerns including "abductions, sexual abuse, child abuse [and] suicide attempts." Notwithstanding, the District renewed Westry's contract on July 1, 2004, for the following school year.

Westry worked at Westhill after the end of normal school year in June of 2004.

On August 20, 2004, Westry submitted a resignation letter to Anthony Mazzullo, the District's Superintendent of Schools. The letter detailed a number of Westry's complaints about his colleagues and supervisors at Westhill, and included allegations of racism[3] and "inappropriate sexual commentary."[4] According to the letter, Westry decided to resign because "it is impractical

---

[3] The letter includes the following references to race or racism: (1) "the anemic leadership . . . [used] haranguing pejoratives to humiliate me and another beleaguered Black colleague;" (2) "interrogating my kids and calling security on those—often not the same ethnic background as the complainant;" (3) "two Latino-Americans and one Haitian-American were denied the opportunity to graduate because of the heartless inaction of two veteran counselors and their contagious, pernicious, racism;" (4) "preferential treatment, double standards, along largely racial lines . . . ratchet[ed] up the hostile environment;" and (5) "I am told that I am the first Black male to service in the capacity of guidance counselor here."

[4] The letter includes the following references to gender: (1) "[in my interview] I was asked if I could handle working with women as my bosses;" and (2) "the lascivious and inappropriate sexual commentary about and visual inspection of men's hands—and the concomitant and tacit reference to genitalia size—, ratchet[ed] up the hostile environment."

2

to continue operating in an ideological framework of counseling that is antithetical to true school counseling and against those who won't rest until my presence and caring approach is jettisoned from the building."

On August 25, 2004, Westry began work as a guidance counselor at Crosby High School in Waterbury, Connecticut for the 2004-2005 school year.[5]

Around September 1, 2004, Westry sent an e-mail to students at Westhill informing them of his decision to resign. In the e-mail, Westry complained of the "unprofessionalism" of one supervisor and "the disproportionate poor regard for some groups of students." According to the e-mail, Westry "could not continue in an impossible situation . . . which prevent[ed him] from providing balanced academic planning and psycho-social counseling delivery." The e-mail also announced that Westry had found work as a counselor at a school where the principal "holds a philosophy of counseling that I can work with in good conscience."

In his complaint, Westry alleges that in "late November-December 2004," Deluca "passed on negative references" to Barbara Carrington-Lawlor, Crosby's principal. Westry further alleges that Deluca "sent [Carrington-Lawlor] a distorted webpage" falsely asserting that Westry had a "felonious criminal history."

According to Deluca, she never communicated with anyone at Crosby. In November or December 2004, Carrington-Lawlor called Figluizzi seeking an employment reference for Westry. Figluizzi confirmed that Westry had worked at Westhill and that he was no longer employed there. According to Figluizzi, she never communicated negative information about Westry to anyone at Crosby. Carrington-Lawlor confirmed that she never received negative

---

[5] Westry did not receive his final paycheck from Westhill until September 2004.

3

information about Westry from anyone employed by the District. After these claimed conversations, the Waterbury School District extended Westry's contract of employment.

In December 2004, Westry filed a discrimination claim with the Connecticut Commission on Human Rights and Opportunities (CHRO), and the Equal Employment Opportunity Commission (EEOC).

In December 2004, the EEOC mailed Westry's complaint to the District. In January 2005, after returning from the winter break, Figluizzi and Deluca first learned about Westry's EEOC complaint.[6]

Westry filed a second EEOC complaint alleging retaliation on June 29, 2005.

The EEOC dismissed Westry's complaint in October and November 2005, and Westry received "right to sue" letters regarding both EEOC complaints.

II.     Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 5(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the

---

[6] On December 8, 2005, Westry filed suit alleging racial discrimination by the Waterbury Public Schools. See 3:05cv1882(VLB). That case was dismissed for failure to serve process in a manner consistent with state law. See Dkt. 24.

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S.Ct. 2505.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. Celotex, 477 U.S. at 323-25, 106 S.Ct. 2548; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. Anderson, 477 U.S. at 248, 106 S.Ct. 2505; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Maffucci, 923 F.2d at 982.

Since Westry is proceeding pro se, the Court must apply "less stringent standards" to his

submissions than to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Court will also "interpret [his papers] to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). It is well-settled in this Circuit that "a pro se litigant should be afforded every opportunity to demonstrate that he or she has a valid claim." Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 762 (2d Cir.1990) (internal alteration omitted). At the same time, however, "[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."[7] Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002); see Jones v. W. Suffolk Boces, No. CV-03-3252, 2008 WL 495498, at *3 (E.D.N.Y. Feb. 20, 2008) ("[A] plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment.").

III. Discussion

    A. Title VII Claims

"A plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004), (citing Raniola v.

---

[7] The Court notes that the District's summary judgment papers included a filing that properly notified Westry of the nature and consequences of its motion for summary judgment, in accordance with D. Conn. L. Civ. R. 56(b) and Vital v. Interfaith Medical Center, 168 F.3d 615, 620 (2d Cir. 1999).

6

Bratton, 243 F.3d 610, 617 (2d Cir. 2001)). Under either theory, liability in a disparate-treatment case "depends on whether the protected trait ... actually motivated the employer's decision." Raytheon Co. v. Hernandez 540 U.S. 44, 52, 124 S.Ct. 513, 519 (2003).

1. Hostile Work Environment

"In order to prevail on a hostile work environment claim, a plaintiff must first show that 'the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Feingold v. New York, 366 F.3d at 149, (quoting Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.2002)); see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (stating that a hostile work environment is created "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"). While a single extraordinarily severe incident may be sufficient to meet this threshold, generally offensive "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); see also Feingold v. New York, 366 F.3d at 150. While facially gender or race neutral incidents may be used to support a hostile work environment claim, the plaintiff must demonstrate that the harassing incidents were prompted by his race or gender. Alfano v. Costello, 294 F.3d at 374.

Westry alleges that the following contributed to a hostile work environment while he was at Westhill: (1) staff members made sexual jokes and had conversations about sex;[8] (2) on one

---

[8] In his EEOC complaint, Westry referred to an incident in which a staff member asked "who got some ass this weekend." Westry also claims that "there have been several comments about the penis size of men and the visual inspection of male faculty members hands as an

7

occasion a staff member touched the buttocks of another staff member; (3) Westry's character was "impugned" in front of a student;[9] (4) Westry was discouraged from taking college courses while working; (5) Westry was asked to work beyond the hours required by his contract and during the summer break; (6) security officers were called to remove students – including minority students – from Westry's office against his wishes; (7) three minority students were denied the opportunity to graduate; (8) Westry's final paycheck was received late; (9) there was "preferential treatment, double standards, along largely racial lines"; (10) Westry was criticized for failing to complete paperwork in a timely manner, and for spending too much time providing non-academic counseling to students; and (11) Westry was criticized for being absent too frequently and for failing to properly report absences.

Taken together, however, no reasonable jury could find that these incidents were sufficiently severe or pervasive to alter the conditions of Westry's employment. In particular, Westry does not seem to allege that the only incidents that have any plausible connection to gender – the sexual jokes, conversation and the touching incident – were ever directed at Westry.

Further, even if any of the other circumstances described by Westry could be considered harassment, Westry has not provided an adequate basis to infer that they were related to Westry's gender or race. While Westry seems to allege a connection between certain incidents and his race, he has not provided enough detail of these incidents – by affidavit or otherwise – to

---

indicator of penis size."

[9] Although it is difficult to discern, Westry may be referring to a June 2004 incident in which Deluca said "It's always Dinie and Eric." Dinie Victor was another Black counselor at Westhill.

determine the nature of that connection.[10]

### 2. Adverse Employment Action

To establish a prima facie case of discriminatory treatment based on an adverse job action a plaintiff must show "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Feingold v. New York, 366 F.3d at 152 (citing Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir.2002)).

Once a plaintiff has established a prima facie case, the defendant must then articulate "a legitimate, non-discriminatory reason for" the adverse employment action. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). If they are able to do so, "the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action." Id.

"Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Feingold v. New York, 366 F.3d at 152 (internal quotation marks and alterations omitted). Westry alleges the following possible adverse employment actions: constructive discharge, withholding pay, and being required to work long hours and during the summer.

#### a. Constructive Discharge

"An employee is constructively discharged when his employer, rather than discharging

---

[10] Further, the District has provided evidence that they had a sexual harassment policy and complaint process in place, and that Westry failed to use this process. Westry has not described circumstances suggesting that he should not have been expected to use the complaint process.

9

him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003). Working conditions are intolerable when, viewed as a whole, they are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir.1996) (quotations omitted). In addition, as in other disparate treatment cases, the plaintiff must establish that the constructive discharge "occurred in circumstances giving rise to an inference of discrimination on the basis of [his] membership in [a protected] class." Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003).

As set forth above, Westry has not described circumstances that were so difficult that a reasonable person would have felt compelled to resign. Further, Westry's own resignation letter, and the e-mail he sent shortly after resigning, indicate that he was voluntarily resigning because he disagreed with the "ideological framework of counseling" at Westhill, and not because he felt driven out by race or gender based animosity.

      b.     Late Paycheck and Excessive Hours

The assignment of a disproportionately heavy workload may constitute an adverse employment action. See Feingold v. New York, 366 F.3d at 152 -153. Westry alleges that he was expected to work long hours and during the summer, and that his summer pay arrived late. Westry seems to allege that these circumstances were connected to his race. Westry does not claim that he was expected to work longer hours than white employees, however. In his EEOC complaint, Westry did allege that he "was pressured to work summer days, not required of a white counselor." However, Westry has not provided a sufficient basis for inferring that his work during the summer was involuntary, or for determining whether the white counselor should

10

also have been expected to work during that time.

Even if Westry's late paycheck for his summer work constituted an adverse employment action, Westry has failed to explain how the delay might have been connected to his race.[11] While Westry seems to claim that he was paid later than white employees, he has not provided the basis for this belief. In particular, he has not provided evidence concerning when White employees worked and when they received their paychecks.

Thus, Westry has failed to establish a prima facie case of race-based discrimination.

### 3. Retaliation and Defamation

"In order to establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Feingold v. New York, 366 F.3d at 156 (internal quotation marks and alterations omitted).

Westry alleges that a person at Westhill communicated defamatory information to his new employer in retaliation for Westry's EEOC complaint. However, Westry has not provided the basis for his belief that defamatory statements were made, and the defendants deny that they communicated any negative information. Further, Westry does not seem to dispute that his former supervisors at Westhill were unaware of his EEOC complaint at the time they communicated with Crosby.

Thus, Westry has failed to establish a prima facie case of Title VII retaliation. For the

---

[11] Furthermore, if white employees were paid more promptly for summer work, this appears to be inconsistent with Westry's claim that white employees did not work during the summer.

same reasons, Westry has not established a prima facie case of common law defamation.

B. Title IX

It remains uncertain whether Title IX provides a private right of action to remedy gender-based employment discrimination by educational institutions. However, if a private right of action exists it is clear that "identical standards apply to employment discrimination claims brought under Title VII, [and] Title IX." Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000). Thus, the District is entitled to summary judgment on Westry's Title IX claims for the reasons set forth above.

IV. Motion for Relief under Rule 56(f)

Westry seeks the opportunity to depose his former colleagues to gather evidence to support his claims. See Dkt. # 24. Westry argues that he was not able to obtain affidavits from these colleagues because the District had intimidated them. However, Westry has failed to present his own account – by affidavit or otherwise – of sufficiently severe or pervasive harassment, or of circumstances suggesting that any such harassment was connected to Westry's race or gender. In September 2007, the Court "cautioned [Westry] to comply with any notice directing him how to respond to . . . a motion [for summary judgment]," and warned Westry that "[t]he information [he had submitted at that point] is inadequate." Dkt. # 22. In January 2008, the Court cautioned Westry to respond to the motion for summary judgment "or it likely will be granted." Dkt. # 26. If Westry had presented his own account of circumstances suggesting that he was discriminated against or suffered retaliation the additional discovery he now seeks would

be superfluous.[12]

IV.  Conclusion

The motion for summary judgment **[Doc. # 19]** is **GRANTED**, and judgment is entered for the defendant.  The clerk is directed to close this case.

SO ORDERED this ___14th___ day of March 2008, at Hartford, Connecticut.

      __/s/ Christopher F. Droney__
      **CHRISTOPHER F. DRONEY**
      **UNITED STATES DISTRICT JUDGE**

---

[12] While evidence from third-parties might be required to prove Westry's defamation claim, Westry has failed to identify which potential witnesses he expects to be able to provide such evidence, or why he has been unable to collect such evidence.

13